LAW OFFICES

## HEDLAND, BRENNAN, HEIDEMAN & COOKE
A PROFESSIONAL CORPORATION

ANCHORAGE:

JOHN S. HEDLAND
JAMES T. BRENNAN
SARA E. HEIDEMAN
AMY L. VAUDREUIL
PATRICK M. ANDERSON

BETHEL:

CHRISTOPHER R. COOKE
JIM J. VALCARCE
KENNETH S. ROOSA
THOMAS WAYNE CARY

1227 WEST NINTH AVENUE, SUITE 300
ANCHORAGE, ALASKA 99501-3218
TELEPHONE (907) 279-5528
TELEFAX (907) 276-0677

BETHEL OFFICE:

900 THIRD AVENUE
P. O. BOX 409
BETHEL, AK 99559-0409
(907) 543-2744

13 March 2003

Via Mail & Facsimile No.: 202-619-2922

Ms. Carla Pennington-Cross
Office of the General Counsel,
United States Department of Health and Human Services
HHS Cohen Building, Room 4760
330 Independence Avenue, SW
Washington, D.C. 20201

Re: Michael Sheldon, Individual and for Daisy and Jason Hart and for the Estate of Donna Marie Hart Sheldon (Deceased) — Claim No. 00-0021

Dear Ms. Pennington-Cross:

As we discussed on the telephone yesterday, this office represents Michael Sheldon, the husband of the deceased, Donna Marie Sheldon. As revealed by the records previously produced by this office, Donna Marie Hart Sheldon underwent a reanastomosis of her fallopian tubes at the Alaska Native Medical Center in Anchorage, Alaska on October 3, 1997. At the time of the surgery Ms. Sheldon was in good health. Due to the negligent medical care provided to her by ANMC, Ms. Sheldon developed adult respiratory distress syndrome, followed by multiple organ failure. She was transferred by ANMC to Providence Alaska Medical Center on October 13, 1997 where she subsequently died on October 16, 1997. An autopsy was completed on February 6, 1998, which determined the cause of death to be severe adult respiratory distress syndrome manifest as diffuse alveolar damage, along with multi-organ failure. Claimant Michael Sheldon received a copy of that autopsy on March 20, 1998. For your convenience, a copy of that autopsy stamped as received on March 20, 1998 is attached hereto as Exhibit A for your convenience. Mr. Sheldon first became aware of the causal link between the care his wife received at ANMC and his wife's death upon his review of that autopsy.

On October 14, 1999, less than two years after Ms. Sheldon's death on October 16, 1997, and over five months prior to the two-year anniversary of Mr. Sheldon's discovery of the causal connection between the care his wife received at ANMC and her death, counsel for Michael Sheldon prepared and shipped a properly stated claim pursuant to the Federal

EXHIBIT ___8___
PAGE _1_ OF _13_

13 March 2003
Carla Pennington-Cross — U.S. DHHS
Page 2

Tort Claims Act to the Department of Health and Human Services. The package containing the claim and accompanying documents was shipped via Federal Express in a shipping envelope labeled "urgent" and addressed to the Department's Public Health Claims branch in the Parklawn Building located at 5600 Fishers Lane in Rockville, Maryland. The room number located on the label was room 18-20, which was the former location of the claims branch of DHHS. A copy of this shipping label is attached hereto as Exhibit B for your convenience. A copy of the shipping envelope marked "urgent" is attached hereto as Exhibit C.

On October 21, 1999, the Fed Ex packet containing the claim was returned to the office of counsel for Mr. Sheldon, undelivered. A telephone call to Federal Express revealed that Federal Express had attempted delivery to DHHS at room 18-20 of the Parklawn Building. Delivery was apparently been refused by the DHHS branch then occupying that office space, the Health Resources Services Administration. The package was then delayed by Federal Express and returned to counsel for claimant Michael Sheldon without any other attempt at delivery by Federal Express and without any other notification to claimant of the delivery problems. A copy of a letter later received from Federal Express acknowledging the problem is attached hereto as Exhibit D. Although the letter from Federal Express asserts that the problem was a "missing suite number", it is apparent from the shipping label that the suite number was not, in fact, missing. Rather, the claim package was simply directed to an office no longer occupied by the claims branch of DHHS, which had moved to a different office location within the same building, but instead occupied by a different branch of the same agency.

Counsel for claimant Michael Sheldon re-filed the claim package with DHHS on October 21, 1999, this time directing that delivery be made to room 5C-10 of the Parklawn Building rather than Room 18-20 of that building. A copy of this second Federal Express label is attached hereto as Exhibit E. According to a letter dated December 2, 1999 from Dorothea Koehler, Paralegal Specialist with the claims branch of DHHS, the claim was received by the claims branch on October 22, 1999.

According to 28 U.S.C. § 2401(b), a tort claim against the United States must be presented in writing to the appropriate Federal agency within two years of the accrual of the claim. In the instant case the claim accrued when Mr. Sheldon discovered the causal connection between the death of his wife and the treatment she had received at ANMC, that is, the date he obtained and reviewed the autopsy report. Because Mr. Sheldon did not obtain the autopsy report until March 20, 1998, the claim received by DHHS was timely filed.

Even if the cause of action in the instant case were to be determined to have accrued on the date of Donna Sheldon's death, October 16, 1997, the claim in this case was still timely filed. Pursuant to 28 CFR § 14.2(a), "a claim shall be deemed to have been presented when a Federal agency receives from a claimant, his duly authorized agent or legal representative, an executed Standard Form 95 or other written notification...." Subsection

EXHIBIT 8
PAGE 2 OF 13

13 March 2003
Carla Pennington-Cross — U.S. DHHS
Page 3

(b) of 28 CFR § 14.2 further states, "[w]hen a claim is presented to any other Federal agency, that agency shall transfer it forthwith to the appropriate agency, if the proper agency can be identified from the claim, ..." 28 CFR § 14.2(b). Finally, DHHS' own regulations state that "[f]or purposes of the regulations in this part, a claim shall be deemed to have been presented when the Department of Health and Human Services receives, at a place designated in paragraph (b) of this section, an executed Standard Form 95 or other written notification of an incident ...." 45 CFR § 35.2(a). Subsection (b), to which the statement in subsection (a) refers, contains no designation of the place to which claims should be directed. See, 45 CFR § 35.2(b). However, 45 CFR § 35.2(c) does state that "[f]orms may be obtained and claims may be filed, with the office, local, regional, or headquarters, of the constituent organization having jurisdiction over the employee involved in the accident or incident, or with the Department of Health and Human Services Claims Officer, Washington D.C. 20201." 45 CFR § 35.2(c). No more specific address, including the Rockville, Maryland address of the claims branch in room 5C-10 of the Parklawn Building, is contained anywhere within § 35.2 which governs the place of filing of an administrative claim against DHHS.

As noted above, the claim in the instant case was presented to DHHS on October 15, 1999. That the delivery was refused by the branch of DHHS then occupying the particular room of the office building noted on the address label of the package does not render the claim untimely. The statutes and regulations governing presentment of administrative claims state only that the claim must be delivered to the appropriate agency, which was accomplished in this case in a timely fashion. In any event, the DHHS office occupying room 18-20 of the Parklawn Building on October 15, 1999 could have accepted delivery and then internally re-routed the package to room 5C–10, or could have directed the Federal Express delivery person to the new location of the claims branch office in the building. Because federal regulations would require that a different agency receiving the claim transfer it to DHHS, those same regulations support the requirement that DHHS must itself transfer the claim package to the appropriate branch within its own agency, particularly when that branch occupies office space in the same building and at the same street address.

If there is any further information we can provide you to assist you in processing this claim, please contact us.

Sincerely,

Amy L. Vaudreuil

ALV:dp
Enclosures (Exhibits A-E)
3180\DHHS Ltr

EXHIBIT B
PAGE 3 OF 13

# STATE OF ALASKA

**RECEIVED**
MAR 20 1998

TONY KNOWLES, GOVERNOR

DEPARTMENT OF HEALTH & SOCIAL SERVICES
Division of Public Health
OFFICE OF THE MEDICAL EXAMINER

5700 East Tudor Road
Anchorage, Alaska 99507-1264
Phone: 269-5090/Fax: 269-5069

---

**DONNA SHELDON AKA DONNA HART**

DATE OF BIRTH:   2/3/63
DATE OF DEATH:   10/16/97
DATE OF EXAMINATION: 10/21/97

PRIVILEGED DOCUMENT  SME 98-275
Do not Duplicate nor Distribute
AS12.65.020(b)

---

## AUTOPSY REPORT

**FINAL ANATOMIC DIAGNOSIS:**
I. Severe Adult Respiratory Distress Syndrome manifest as Diffuse Alveolar Damage (See microscopic description).
   A. Findings consistent with clinical impression of aspiration pneumonia.
      1. Bronchocentric severe focal/multifocal lung injury.
II. Multiorgan system failure.
   A. Clinical renal failure with diffuse renal necrosis.
   B. Multiple minute foci of myocardial injury and myocardial necrosis with extravasated blood and rare neutrophils.
   C. Pericentrovenous hepatic necrosis in a setting of microvesicular hepatic steatosis.
   D. Geographic splenic necrosis.
      1. Fibrinoid material in splenic arterioles.
III. Fallopian tubal reanastomosis, recent, intact and free of evidence of infection.

**TOXICOLOGY:**
Known blood is harvested should subsequent toxicologic examination become indicated. No toxicology is performed due to duration of hospitalization.

EXHIBIT 8
PAGE 4 OF 13

SME98-275
Page 1

EXHIBIT A
PAGE 1 OF 6

**COMMENT:**

Autopsy and investigation reveals that the cause of death in this 34-year-old woman is multiorgan system failure due to severe Adult Respiratory Distress Syndrome occurring subsequent to a clinically documented and anatomically confirmed bilateral fallopian tubal reanastomosis. The autopsy findings support the clinical impression of aspiration pneumonitis as an etiology for the Adult Respiratory Distress Syndrome, anatomically manifest as Diffuse Alveolar Damage.

Investigation and autopsy reveals that the manner of death is natural.

**PRIVILEGED DOCUMENT**
Do not Duplicate nor Distribute
AS12.65.020(b)

_(signature)_

Norman H. Thompson, M.D.
Deputy Chief Medical Examiner
February 6, 1998

NHT/bbr

SME98-275
Page 2

EXHIBIT 8
PAGE 5 OF 13

EXHIBIT A
PAGE 2 OF 6