IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| MICHAEL SHELDON, as personal representative of the estate of Donna Marie (Hart) Sheldon, deceased,<br><br>                Plaintiff,<br>   vs.<br><br>UNITED STATES OF AMERICA,<br><br>                Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)  Case No.  A05–119 CV  [RRB] |

**MEMORANDUM IN SUPPORT OF
MOTION FOR *IN CAMERA* INSPECTION OF DOCUMENTS**

In its initial disclosures dated May 19, 2006, the government stated that it was withholding "Peer review correspondence and findings AS 18.23.030, *et. seq*". See Exhibit A. On December 6, 2006, plaintiff requested that the government produce the requested documents since the Alaska statue, A.S. 18.23.030 does not apply to an action under the Federal Tort Claims Act, and there is no comparable privilege that is recognized in federal courts. See, Exhibit B. On February 1, 2007, the government responded to the request. It did not take issue with plaintiff's assertion that there was no applicable peer review privilege, but asserted that this reference was "a classification error." It stated, in pertinent part, as follows:

> These documents are privileged documents because they were prepared by healthcare providers at the request at the Claims Branch, under the supervision of a lawyer, to assist the Claims Branch in determining the validity of your client's claim….the documents, CLM 66-81, were prepared on or about April 26, 2000 and are addressed to the Chief of the Claims Branch. The documents you seek are work product of

> the DCLM Claims Branch. Thus, the documents are either privileged communications between a lawyer and the client, or work product of the lawyer and persons acting at his or her direction for the purpose of litigation.
>
> We therefore decline your request for the documents.

See Exhibit C.

As is set out below, there is plainly no applicable peer review privilege, under either state or federal law. Although the government now asserts that the documents are privileged as attorney client communications or attorney work product - - doctrines that plaintiff agrees are applicable in this case - - it is far from clear that the documents in question are actually attorney client communications subject to the privilege, or attorney work product. Since plaintiff cannot intelligently address this issue without having an opportunity to review the documents themselves, it is respectfully requested that the court review the documents *in camera* to determine whether or not they are fairly characterizable as attorney client communications or attorney work product such that they are privileged.

    1.    <u>There is no peer review privilege under state law or federal law that applies to the documents in question</u>.

Any alleged privilege to withhold the documents under the A.S. 18.23.030 <u>et. seq</u>. does not apply in the federal court, particularly in an action brought under the Federal Tort Claims Act, and there is no federal privilege for peer review documents. In <u>University of Pennsylvania v. Equal Employment Opportunity Commission</u>, 493 U.S. 182 (1990) the Supreme Court unanimously declined to recognize a peer review materials privilege in a case alleging illegal discrimination against a Chinese American female

Motion for *In Camera* Inspection    - 2 -

professor under Title VII of the Civil Rights Act of 1964. Several lower courts have found this decision instructive in declining to recognize a privilege with respect to medical peer review materials. *See, e.g.*, Virmani v. Novant Health Incorporated, 259 F.3d 284, 287 (4th Cir. 2001); Patt v. Family Health Systems, Inc., 189 F.R.D. 518, 524-25 (E.D. Wis. 1999); Robertson v. The Neuromedical Center, 169 F.R.D. 80 (N.D. La. 1996); Pagano v. Oroville Hospital, 145 F.R.D. 683, 692 (E.D. Ca. 1993).

Syposs v. United States, 63 F. Supp.2d 301 (W.D.N.Y. 1999) appears to be directly in point. In Syposs, a federal tort claim action alleging malpractice, the court found that peer review materials were not privileged, either under a New York statute that allegedly created a "peer review" privilege, or as a matter of federal law. 63 F.2d at 303. As with the cases cited above, the court relied upon University of Pennsylvania v. EEOC. It also noted that the Federal Health Care Quality Improvement Act of 1986, 42 USC §§ 10101 et. seq., while creating immunity for officials conducting medical peer reviews, did not create a privilege with respect to peer review information. 63 F. Supp.2d at 303-04. Syposs has been followed by several other U. S. District Court decisions. *See* Henderson v. Medical Center Enterprise, 2006 U. S. Dist. LEXIS 57898 (M. D. Ala. 2006); Sabatier v. Barnes, 2001 U. S. Dist. LEXIS 2240 (E. D. La. 2001); Dole v. Smith, 2000 U. S. Dist. LEXIS 22322 (E. D. N. Y. 2000).

In Syposs, the court alluded to, but did not follow, the decision in Weekoty v. United States, 30 F. Supp. 2d 1343 (D. C. N. M. 1998) which recognized the peer review privilege in a federal tort claim action. 63 F.2d at 308. As noted above, several courts that have followed Syposs, but Weekoty has not been well received. *See*, *e. g.*, Nilavar v.

Motion for *In Camera* Inspection        - 3 -

Mercy Health System, 210 F.R.D. 597 (S. D. Oh. 2002) citing Weekoty but noting that "the great weight of the federal cases…counsel that [peer review] privilege does not exist in the federal common law, and should not be recognized in a case such as this". 210 F.R.D. at 607. The court stated as follows:

> In sum, the Court finds that the federal common law has never adopted a physician peer review privilege, and that the great weight of authority, as well as 'reason and experience', militate against doing so in this instance. ….In sum, the great weight of federal authority does not support Defendants' theory that a physician peer review privilege either has been or should be recognized as a matter of federal common law.

210 F.R.D. at 609. *See also* Marshall v. Spectrum Medical Group, 198 F.R.D. 1 (D.C. Me. 2000) citing Weekoty but not following it in the context of that case's facts.

Most significantly, the Ninth Circuit itself has rejected the Weekoty decision. In Agster v. Maricopa County, 422 F.3d 836 (9th Cir. 2005) the court considered the question of whether a "mortality review" by a company whose employees provided health care in a jail where a prisoner died was privileged, and held that it was not. It expressly held that it was not bound by the Arizona statute establishing a privilege for peer review materials. 422 F.3d at 839. It also noted that the parties opposing production of the peer review material relied upon the rationale of Weekoty, and stated as follows:

> We are constrained by two considerations, one general and the other particular to this case. We must be 'especially reluctant to recognize a privilege in an area where it appears that Congress has considered the relevant competing concerns but has not provided a privilege itself.' *Univ. of Pennsylvania v.EEOC*, 493 U. S. 182, 189, 107 L. Ed. 2d 571, 110, S. Ct. 577 (1990). The HCQIA of 1986 granted immunity to participants in medical peer reviews, but did not privilege the report resulting from the process. *See* 42 U. S. C. §§ 11101-

Motion for *In Camera* Inspection     - 4 -

> 11152. Congress amended the Act in 1987 to state that "nothing in this subchapter shall be construed as changing the liabilities or immunities under law or preempting or overriding any State law". Pub. L. No. 100-177, § 402(c). As Congress has twice had occasion and opportunity to consider the privilege and has not granted it either explicitly or by implication, there exists a general objection to our doing so.

422 F.3d at 839.[1] Other cases supporting plaintiff's position in this case are Leon v. County of San Diego, 202 F.R.D. 631 (S. D. Ca. 2001), a medical malpractice case; Burrows v. Red Bud Community Hospital District, 187 F.R.D. 606 (N. D. Ca. 1998); Price v. Howard County General Hospital, 950 F. Supp. 141 (D.C. Md. 1996); Atteberry v. Longmont United Hospital, 221 F.R.D. 644 (D.C. Co. 2004). Brannan v. Northwest Permanente, 2006 U.S. Dist. LEXIS 69933 (W.D. Wa. 2006) is contrary but not persuasive. The court applied an Oregon peer review privilege to a malpractice claim, but the parties appear to have conceded its applicability, and argued only about its scope (pp. 4-5) notwithstanding the Ninth Circuit's explicit holding in Agster that "we are not bound by [State peer review privilege] law…." 422 F.3d at 839.

It has been suggested that the privilege should apply in a medical malpractice case, even if it does not apply in a claim by a practitioner alleging discrimination or improper conduct by a peer review committee, since the malpractice claim can be proven without the materials while the other kind of claim arguably could not be. See Memorial Hospital v. Shadur, 664 F.2d 1058, 1062-63 (7th Cir 1981) citing Bredice v. Doctors Hospital, Inc., 50 F.R.D. 249 (D.C. D.C. 1970).These cases have little or no relevance since they were

---

[1] The consideration "peculiar to this case" had to do with the fact that the death occurred in a prison.

Motion for *In Camera* Inspection      - 5 -

decided before enactment of the federal statutory scheme that did not include a peer review privilege, and before University of Pennsylvania v. EEOC. Additionally, it is directly contrary to the Ninth Circuit's decision in Agster, which refused to recognize the privilege in a case where the asserted tort was not committed in the process of peer review.

> 2. It is questionable whether the documents in question are privileged as attorney client communications or as attorney work product, and the issue can be resolved only by an *in camera* review by the court since plaintiff does not access to the documents and does not know who the alleged attorney was, or the identity of the persons supplying the information in question.

Obviously, for either the attorney client privilege or the attorney work product privilege to apply, there has to have been some involvement by an attorney. It is entirely unknown to plaintiff who, if anyone, that attorney was. According to the government, the documents were prepared "on or about April 26, 2000". This action was not filed until June of 2005, and plaintiff agreed to a substantial extension of time to file an answer since the U.S. Attorney's Office was not familiar with the case. See affidavit of John S. Hedland. Thus, it seems obvious that the attorney involved, if any, was not in the Department of Justice. While the Claims Branch may employ attorneys, none of the persons with whom plaintiff's counsel dealt in connections with the administrative claim prior to April 26, 2000 was an attorney. See Affidavit of John S. Hedland. Additionally, plaintiff does not know who the persons providing the information to the attorney, if any, were.

The federal court appears to follow Alaska law in regard to the scope of the attorney client privilege. See, <u>Manumitted Companies, Inc. v. Tesoro Alaska Company</u>, 2006 U.S. Dist. LEXIS 57658, (D. Ak. 2006). As the court noted in that case, the scope of the attorney client privilege is, under Alaska law, governed by the "control group" test. <u>Langdon v. Champion</u>, 752 P.2d 999, 1002 (Alaska 1988). Thus, unless the person providing the information to the attorney is part of the "control group" the communications are not privileged. See also, Alaska Rule of Evidence 503(a) which defines "representative of the client" as "one having authority to obtain professional legal services and to act on the advise rendered pursuant thereto, on behalf of the client" for purposes of applying the attorney client privilege to the communication. In other words, unless the persons providing the information - - even if it went to an attorney - - were members of the "control group" and had authority to obtain and act upon legal services on behalf of the government, the privilege does not apply. Plaintiff believes that it is highly unlikely that the information in question came from such individuals.

Insofar as the attorney work product doctrine is concerned, <u>Waldon v. State</u>, 27 P.3d 297 (Alaska 2001) is instructive. In that case, the court cited <u>United State v. Nobles</u>, 422 U.S. 225 (1975) (27 P.3d at 33) and stated, in pertinent part, as follows:

> The attorney work-product privilege is designed to protect the mental impressions, conclusions, and opinions of an attorney in the preparation of materials for use in litigation. The United States Supreme Court has stated that "the work-product doctrine shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case." We have set three requirements for an item to covered by the work-product privilege: (1) the items must be a document or other tangible thing "; (2) the

Motion for *In Camera* Inspection       - 7 -

>item must be "prepared in anticipation of litigation"; and (3) the item must be prepared by or for the parties' attorney or representative.

27 P.3d at 32-33. See also, McKibben v. Mohawk Oil Co., Ltd., 667 P.2d 1223, 1231 (Alaska 1983). Plaintiff cannot understand how documents prepared by healthcare providers and submitted to the Claims Branch could reflect "the mental processes of the attorney" even if an attorney is somehow involved in receiving them.

Additionally, the mere fact that a claim has been filed that has not yet resulted in litigation does not shield the document from discovery simply because of the potential for litigation. In Langdon v. Champion, supra, the court considered whether documents prepared by an insurance company in connection with potential claims were subject to the work product privilege. It analyzed two schools of thought on the subject, and held that they would be "conclusively presumed to have been compiled in the ordinary course of business" and hence not subject to work product privilege "absent a showing that they were prepared at the request or under the supervision of the insured's attorney" and that "Prior to such attorney involvement, materials held by insurers are subject to discovery without regard to any work product restrictions." 752 P.2d at 1007.

The Claims Branch of the Department of Health and Human Services is comparable to the claims department of an insurance company. Absent a showing - - which the government may or may not be able make pursuant to an *in camera* inspection - - that the documents were prepared "at the request or under the supervision of [its] attorney" the documents are conclusively presumed to be generated in the ordinary course of business and subject to discovery.

Motion for *In Camera* Inspection        - 8 -

3.  <u>Conclusion</u>.

For the above reasons, plaintiff respectfully requests that this court conduct an *in camera* inspection of the documents in question to determine whether they are subject to any reasonable claim of privilege in this action.

Dated at Anchorage, Alaska this 16th day of February 2007.

    Hedland, Brennan and Heideman
    Attorneys for Plaintiff
    /s/ John S. Hedland
    Anchorage, Alaska 99501
    Phone: (907) 279-5528
    Fax: (907) 278-0877
    E-mail: jhedland@hbhc.alaska.net
    ABA No. 6903014

<u>CERTIFICATE OF SERVICE</u>

I certify that on the 5th day of May 2006 a copy of the foregoing was served electronically on:
<u>Daniel R. Cooper, Jr., Assistant U.S. Attorney</u>
<u>s/John S. Hedland</u>